IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **KENNETH JAMES BEAUCHAMP,** | * | |
| Petitioner, | * | |
| v. | * | Civil Action No.: PWG-14-603 |
| **J. MICHAEL STOUFFER,** *et al.*, | * | |
| Respondents. | * | |
| | *** | |

## MEMORANDUM

Per my Order, ECF No. 9, the parties have provided further briefing regarding Petitioner's request for stay and abeyance, ECF No. 8. *See* ECF Nos. 10–15. For the reasons stated below, the case shall proceed for briefing on the merits of the claims asserted in the Petition for Writ of Habeas Corpus.[1]

### Background

On September 5, 2008, Petitioner was tried and convicted of first-degree murder in the Circuit Court for Baltimore County. State Ct. Docket, Resp. Ex. 1, ECF No. 3-1. Petitioner was sentenced to serve life, with all but fifty-five years suspended. *Beauchamp v. Maryland*, No. 02390, at 1 (Md. Ct. Spec. App. Aug. 10, 2010) (unreported), Resp. Ex. 5, ECF No. 3-5. The following evidence was produced at trial:

> On the afternoon of August 30, 2007, police found the body of Patrick Pearce lying under a pile of trash on Todd's Lane, which appellant describes as a "dirt road" in Baltimore County. An autopsy determined that Pearce's cause of death was a small-caliber bullet wound to his chest. Appellant was later charged with Pearce's murder.

---

[1] Respondents filed a limited answer in response to the Court's order to show cause. Resp., ECF No. 3.

> At trial, the State and the defense presented several witnesses . . . . [A]ppellant was convicted of first-degree murder after the following evidence was presented at trial.
>
> On the morning of August 26, 2007, appellant drove his sports utility vehicle to pick up Pearce purportedly "to price a job[] and go to Wal-Mart." Before going to either destination, appellant stopped at a convenience store so that Pearce could buy cigarettes and a drink. According to a statement appellant eventually gave to police, once Pearce returned to the vehicle, appellant turned left out of the store's parking lot to continue on the way to the potential job site. Instead, video footage from the store's surveillance camera showed appellant turning right out of the parking lot, which put him in the direction of the scene of the murder.
>
> As the two drove away from the convenience store, Pearce received a telephone call from his fiancée, Tammy Fisher. During that call, when asked where they were, both Pearce and appellant simply told Fisher that they were driving on a "country road." Later that afternoon, appellant told Fisher that he left Pearce at Wal-Mart so that appellant could run some personal errands. However, a subsequent review of the Wal-Mart's security cameras did not corroborate appellant's story because there was no video evidence of appellant's vehicle in the Wal-Mart parking lot or of Pearce entering the store. At around four o'clock that afternoon, Fisher reported Pearce missing when he failed on several occasions to answer his cell phone.
>
> Four days later, Pearce's body was found under a pile of trash on Todd's Lane, which, as noted, appellant describes in his brief as a "dirt road." A subsequent police investigation determined that Pearce had likely been dead for three to four days before his body was found. He was also found in the same clothes that he was wearing on the day he was reported missing. A cigarette butt with appellant's DNA was found approximately twenty-five feet from Pearce's body, and cell phone records disclosed that appellant and Pearce were likely near Todd's Lane when Pearce received the phone call from Fisher. In addition, police recovered other evidence from the scene of the murder that was substantially similar to items found near appellant's temporary residence, including some corrugated plastic sheeting and fairly distinctive cardboard shipping boxes (only 208 such boxes were ever manufactured).

*Id.* at 1-3 (footnote omitted).

After he was found guilty, Petitioner noted a timely appeal wherein he raised the following claims:

1. Do Tammy Fisher's medical records contain any information that should have been disclosed to Beauchamp?

2. Did the trial court err in admitting prejudicial hearsay evidence relating to Tammy Fisher's saying Beauchamp was out of breath during a particular phone call?

3. Did the state unnecessarily present evidence in packaging marked "biohazard" in order to inflame the jury?

4. Was possibly exculpatory evidence destroyed by the state without testing in violation of appellant's due process right?

Br. for Appellant 2, Resp. Ex. 2, ECF No. 3-2.

On August 10, 2010, the Court of Special Appeals of Maryland affirmed Petitioner's judgment of conviction; the mandate issued on September 9, 2010. *Beauchamp*, No. 02390, at 15. Petitioner sought no further review in the Maryland Court of Appeals. Petitioner instituted state post-conviction proceedings on January 25, 2011. He raised the following claims:

> (A) trial counsel was ineffective for (1) failing to confront cigarette butt evidence, (2) failing to argue the importance of evidence collection, chain of custody, and disposal/destruction of potentially exculpatory evidence, (3) failing to prevent Tammy Fisher from testifying, (4) failing to object to a confrontation violation; (5) failing to argue the motion for judgment of acquittal with particularity, (6) failing to object to the State's improper remarks during closing, and (7) failing to preserve meritorious issues for appellate review; (B) the trial court abused its discretion by issuing unwarranted instructions on flight; (C) the police did not view all angles of the surveillance cameras of the Wal-Mart parking lot; (D) the State committed misconduct by misstating the evidence and misleading the jury; and (E) his right to confront witnesses was violated.

*Beauchamp v. Maryland*, No. 03-K-07-4687, at 2-3 (Cir. Ct. for Balt. Cnty. Dec. 21, 2011), Resp. Ex. 6, ECF No. 3-6.

The petition for post-conviction relief was denied by the Circuit Court for Baltimore County in an opinion and order dated December 21, 2011. *Id.* Petitioner filed an application for leave to appeal the denial of post-conviction relief, asserting the following claims: (A) "the post-conviction court erred by concluding that [Beauchamp] waived the allegation that his trial counsel rendered ineffective assistance by failure to object to a jury instruction"; and (B) "the

3

post-conviction court erred by concluding that [Beauchamp] was not denied his Sixth Amendment right to confront the witnesses against him"; and that (C) trial counsel was ineffective for failing to preserve the purported Six Amendment violation for appeal. App. for Leave to Appeal Denial of Post-Conviction Relief 8, 12, 17–18, Resp. Ex. 8, ECF No. 3-8. With regard to the witnesses, he claimed that there were "expert witnesses who rendered their opinions despite the fact they were surrogates for those who conducted the autopsy and tested for DNA." *Id.* at 1-2. According to Petitioner, one witness "never touched or tested the partial cigarette," and the analyst who "physically had custody of and analyzed the evidence" did not testify. *Id.* at 6.7. In an unreported opinion filed on February 21, 2014, the Court of Special Appeals summarily denied the application for leave to appeal; the mandate issued on March 24, 2014. *Beauchamp v. Maryland*, No. 2402 (Md. Ct. Spec. App. Feb. 21, 2014) (per curiam) (unreported), Resp. Ex. 9, ECF No. 3-9.

In this Court, Petitioner asserts the following claims: (1) [A][2] the State destroyed exculpatory evidence, in violation of his federal constitutional rights; (2A) [E] his right to confront witnesses was violated; (2B) [B] the cigarette butt admitted into evidence "was not in the same condition as when collected from crime scene," as "shown by the DVD of the crime scene," and therefore it was improperly admitted; (3) [C] the post-conviction court and Court of Special Appeals erred by concluding that he waived his claim that "his trial counsel rendered ineffective assistance by failure to object to a jury instruction"; (4) [D2] trial counsel rendered ineffective assistance by failing to preserve the confrontation issue and the jury instruction issue for appeal; (5) [D1] trial counsel rendered ineffective assistance by failing to investigate the case and call certain defense witnesses. Habeas Pet., ECF No. 1; Resp. As best I can discern, Claim

---

[2] Petitioner refers to his claims by number; Respondents reorder the claims and refer to them by letter. For ease of reference, I include the letters that Respondents use in brackets.

2B, regarding the cigarette, has two components. Petitioner appears to claim that the cigarette was improperly admitted because the chain of custody was broken, the cigarette was tampered with, and it was in a different condition at trial than at the crime scene. Habeas Pet. It also appears that he claims that the DNA evidence obtained from the cigarette butt was inadmissible because "those who . . . tested for DNA" did not testify, an issue that may have been raised in state court. *See* App. for Leave to Appeal Denial of Post-Conviction Relief 2; Habeas Pet. Respondents assert that:

> At least two of these claims, Claim (A) and Claim (D)(1), were not pursued by Beauchamp in all appropriate state courts, and therefore, these claims are not exhausted. *See* Exhibits 2-8. Claim (B), if construed as presenting a cognizable claim, is also arguably unexhausted. *See id.* Claim (E), to the extent it addresses anything other than the right to confront witness testimony, is substantively broader than the claim raised in state court, and thus, is unexhausted, at least in part.

Resp. 11-12 (footnote omitted).

After Petitioner was advised of the legal significance of asserting claims that have not been exhausted properly in state court, he filed two replies to Respondents' Response, ECF Nos. 5 & 6, insisting in the second that he raised in state court all of the issues he now presents. Second Reply to Resp. 1–2. Yet, at the same time as he filed his Second Reply, Petitioner filed a Motion to Withdraw Two Issues, asking to withdraw "Issue Number Two Surrogate Witnesses Referred to as Claim B by the Attorney General" and "Issue Number Five Trial Counsel's Failure to Investigate and Interview Potential Witnesses," two allegedly unexhausted issues. Pet.'s Mot. to Withdraw Two Issues 1, ECF No. 7. Two weeks later, Petitioner filed a Motion to Hold Petition in Abeyance or Dismiss without Prejudice, ECF No. 8, asserting that he "decided to raise claims not previously asserted in state proceedings," and asking to stay these proceedings

"while he exhausts his remedies as to those claims in State Court," or alternatively, for dismissal of his Petition without prejudice.

Noting that I could grant a stay and abeyance only if Petitioner had good cause for failing to exhaust his remedies in state court, I directed Petitioner to supplement his filings to demonstrate whether he had good cause, ECF No. 9, and he filed two supplements, ECF Nos. 10 and 12 ("First Supplement" and "Second Supplement"). In his First Supplement, he asked to withdraw his pending motions. Respondents filed a response, arguing that, since the Petition contains both exhausted and unexhausted claims, it is subject to dismissal as a matter of law. Resp. to First Supp. to Habeas Pet., ECF No. 11. Petitioner responded in his Second Supplement that he exhausted "Issue One – Claim A" in his post-conviction proceedings and on direct appeal and that he would withdraw "Issue Two – Claim B, Issue Four – Claim D, and Issue Five – Claim E." Second Supp. to Habeas Pet. 1-2. Then, in a reply to Respondents' response, he asserted that "Issue Four – Claim D . . . was raised in Petition for Post-Conviction Relief on Pages 23, 24 . . . . And also raised in Application for Leave to Appeal . . . on Pages 17, 18, 19, 20," such that "Issue Four – Claim D has had a full round [and] is exhaust[ed]." Pet.'s Reply 2-3. Then, in his Motion to Request for Leave to File an Application to Renew [his Petition] upon Exhausting State Remedies, ECF No. 14, Petitioner asserted that, in an effort to exhaust his state remedies for all claims, he moved the post-conviction state court to consider the unexhausted claims. Petitioner indicated that his motion was denied and that an application for leave to appeal the denial of that motion remains pending. *Id.* at 1. He also insisted that "Issue Two/Claim B Surrogate Testimony of Surrogate Witnesses was raised in [his] first post-

conviction and in leave to appeal," such that it "is and was exhausted." *Id.* at 6.[3] Petitioner's three conflicting motions are pending in this Court.

As for good cause, having asserted that all of the other challenged claims were exhausted, Petitioner addresses only his failure to exhaust Issue Two B [B] and Issue 5 [D1]. With regard to Issue Two B [B], he contends that he failed to raise his claim that the cigarette butt was improperly admitted into evidence because he was not made aware by the post-conviction court that "the evidence was available at the court for petitioner's use to be able to prove this issue in and at post-conviction." First Supp. to Habeas Pet. 1-2. He states he learned that "the evidence was available at the court" fourteen days after the post-conviction hearing. *Id.* at 2. Petitioner may refer to "the DVD of the crime scene" when he states "the evidence was available," but it is unclear from the current record. He assigns error to post-conviction counsel's statement that the issue would not be raised at post-conviction because the purpose of the post-conviction proceeding is to challenge the conviction on legal, not evidentiary, issues. *Id.* Petitioner claims he was unaware of the factual predicate upon which his claim was based until that time. *Id.* With regard to the second unexhausted claim—Issue 5 [D1], that trial counsel failed to interview witnesses—, Petitioner states it was not presented at post-conviction because counsel advised that "some of the witnesses gave testimony at trial and none would have anything to add at post-conviction." *Id.* Ex. 1, ECF No. 10-1.

**Analysis**

Stay and abeyance only is appropriate with regard to an unexhausted claim when it is meritorious and "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Indeed, "when it is clear that an unexhausted claim asserted by a state habeas petitioner lacks merit,

---

[3] Petitioner appears to refer to Part A of Issue Two.

federal habeas court should dismiss the claim on the merits." *George v. Angelone*, 100 F.3d 353, 364 n.14 (4th Cir. 1996) (citing *Granberry v. Greer*, 481 U.S. 129, 135 (1987)). Where a federal habeas petition presents a meritorious but unexhausted claim along with exhausted claims and "the unexhausted claim would not be entertained by the state court if presented" there, the Fourth Circuit has said that it considers "the claim to be exhausted and denied on an adequate and independent state-law ground." *George v. Angelone*, 100 F.3d 353, 364 n.14 (4th Cir. 1996).

Petitioner explains his claim regarding ineffective assistance of trial counsel for failing to interview witnesses pertains to his theory that one witness (Ms. Cramblitt) would have testified that the trash found on top of the victim was not there until six and a half hours after the estimated time of the crime. First Supp. to Habeas Pet. 3. In rejecting post-conviction claims that counsel was ineffective at trial by failing to argue the importance of evidence collection, chain of custody, and disposal or destruction of potentially exculpatory evidence, the post-conviction court noted that Petitioner was "excluded from bringing up the issue of tampering or destruction of evidence under the finally litigated rule." *Beauchamp*, No. 03-K-07-4687, at 8. The post-conviction court noted that Petitioner testified at a hearing before it that counsel "was ineffective for not . . . questioning witnesses who saw a white truck in the area of the crime scene and establishing a lack of trash at the crime scene until 6:30 p.m. on the day in question." *Id.* at 5. The post-conviction court did not address this aspect of Petitioner's claim specifically, and it is unclear if Petitioner presented his assertion about the particular witness he notes here.[4] The post-conviction court's rejection of the claim presented with the assertion regarding witnesses focused on the larger claim regarding counsel's alleged failure to argue chain of custody which was, as noted, rejected under the "finally litigated" rule. *Id.* at 8. Judgment as to

---

[4] The record before the Court does not currently include the complete transcript of the post-conviction hearing.

whether this claim is exhausted or meritorious is reserved until such time as the record is supplemented by Respondents.

## Conclusion

In accordance with the above-stated analysis, Respondents are directed to file an additional response with the full record of the state proceedings, addressing the merits of Petitioner's claims. Petitioner's motions to withdraw, to hold in abeyance, and for leave to file an application to renew upon exhaustion shall be denied without prejudice by separate order, which follows.

_02201S_  
Date

_____  
Paul W. Grimm  
United States District Judge